IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-02217-MSK-KLM

SHANE DERNICK,

     Plaintiff,

v.

COBRA KING INDUSTRY CO., LTD., and
LONG MOTOR CORPORATION,

     Defendants.

_____

### OPINION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
_____

**THIS MATTER** comes before the Court pursuant to Defendant Cobra King Industry Co.'s ("Cobra") Motion to Dismiss (**# 33**), Mr. Dernick's response (**# 54**), and Cobra's reply (**#57**). Mr. Dernick has moved for leave to file a surreply (**# 62**, as supplemented **# 63**) to Cobra's reply, and that motion itself has resulted in a response and a reply (**# 65, 67**). Also pending are Mr. Dernick's Objections (**# 52**, as supplemented **# 55**) to the Magistrate Judge's April 28, 2020 Order (**# 49**) denying Mr. Dernick's oral Motion to Compel (**# 48**), Cobra's response (**# 56**); and Mr. Dernick's Motion to Amend the Complaint to Conform to the Evidence (**# 53**), Cobra's response (**# 60**), and Mr. Dernick's reply (**# 61**).

### FACTS

The operative facts as set forward in Mr. Dernick's Second Amended Complaint (**# 16**) are straightforward. In August 2016, Mr. Dernick ordered a truck fender from Defendant Long Motor Company ("Long"), a supplier of aftermarket auto parts. Long sourced the requested

1

fender from Cobra, a manufacturer located in Taiwan, and arranged for it to be delivered to Mr. Dernick in Colorado.  The fender had not been properly de-burred and contained sharp metal edges, and when Mr. Dernick went to unpack it, he cut a finger on the sharp edge, sustaining injuries.  Mr. Dernick then commenced this action against Long and Cobra, alleging claims sounding in negligence, products liability, and breach of warranty under Colorado common law.

Cobra moves (**# 33**) to dismiss Mr. Dernick's claims against it, arguing that this Court lacks personal jurisdiction over it.  Cobra argues that it does not meaningfully transact business in Colorado, and that the fender was obtained for and delivered to Long by Apex, an independent Taiwanese exporter who is not a party to this case.  Mr. Dernick conducted discovery into Cobra's activities and determined that, in additional to making extensive sales of Cobra parts to automotive enthusiasts in the United States (and Colorado) through various independent exporters, Cobra also sells products directly to purchasers, including purchasers in Colorado. (The specific contours of that situation are discussed in more detail herein.)

Certain additional matters are also pending, and the Court will address those as part of its analysis.

## ANALYSIS

Cobra challenges Mr. Dernick's ability to demonstrate that the Court has personal jurisdiction over it.  The party asserting the existence of such jurisdiction – Mr. Dernick – bears the burden of proving jurisdiction.  *XMission, L.C. v. Fluent, LLC*, 955 F.3d 833, 839 (10th Cir. 2020).  When the Court examines a challenge to its personal jurisdiction over a defendant, the Court may choose to hold an evidentiary hearing to conclusively resolve the issue, or it may make a preliminary finding, based on affidavits or other written materials tendered by the

plaintiff, that, if true, would make a *prima facie* showing of sufficient jurisdiction.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

It is undisputed that Colorado's long-arm statute authorizes this Court to exercise personal jurisdiction over non-resident defendants to the maximum extent permitted by the Due Process clause.  *C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019).  The Due Process clause is satisfied when the defendant "purposefully established minimum contacts within" Colorado, such that the assertion of jurisdiction over it "would comport with 'fair play and substantial justice.'"  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).  Although the jurisdictional inquiry can be conducted at two levels – examining whether the Court has "general" jurisdiction over the defendant because of its systematic contacts with the state, or whether "specific" jurisdiction exists because the defendant's particular actions within the state relate to the claims at issue – the parties agree that the Court's jurisdiction over Cobra can only arise in the context of specific jurisdiction.  The specific jurisdiction analysis requires the plaintiff to demonstrate that the defendant has sufficient minimum contacts with Colorado – that is, that it "purposefully directed its activities at residents" of Colorado and that the plaintiff's injuries arise from the defendant's activities here – and then permits the defendant to demonstrate "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *C5*, 937 F.3d at 1323.

The issue here implicates the "stream of commerce" theory of jurisdiction, a theory which, despite repeated articulations by the Supreme Court, remains, like a stream, meandering and muddy.  The theory first arose in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).  There, the plaintiff, a resident of New York, purchased a vehicle from a local dealer, who in turn obtained the vehicle from a regional distributor handling states in the northeast U.S.

Later, the New York resident drove the vehicle through Oklahoma where, following an accident, the vehicle caught fire and caused injuries to the plaintiffs.  The plaintiffs filed a products liability lawsuit in Oklahoma, naming numerous defendants including the local New York-based retailer and the northeastern regional distributor, neither of whom had any connection whatsoever to Oklahoma.  In finding that Oklahoma could not constitutionally exercise personal jurisdiction over the retailer and distributor, the Supreme Court rejected the contention that "it was foreseeable that" the vehicle could travel to Oklahoma and result in injury there.  The Court conceded that "foreseeability" was a relevant inquiry, but stated that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State[, r]ather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."444 U.S. at 297.  The Court explained that if sale of a product "arise[s] from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."  In such circumstance, "a corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," and the exercise of jurisdiction over the corporation in that state is appropriate. But where the retailer and distributor only sold vehicles locally or regionally, without any knowledge or intention of sales to persons in Oklahoma, the only connection to that forum was 'the mere unilateral activity of those' defendants' customers.  This, the Court concluded "cannot satisfy the requirement of contact with the forum State."  *Id.*

The Supreme Court returned to the "stream of commerce" issue in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1986).  There, a motorcycle rider was injured

in an accident that he blamed on defects in the rear tire of the motorcycle.  The rider brought suit in California against various entities involved in the manufacture of the tire, and those defendants asserted indemnity claims against Asahi, a Japanese company that manufactured the tire tube's valve assembly.  Asahi challenged the California state court's personal jurisdiction over it, claiming that it had no contacts with California and that it merely assembled the valve in Japan and shipped it to Cheng Shin, the Taiwanese company that manufactured the finished tire tube.  Cheng Shin, in turn, sold tire tubes around the world, including a substantial quantity in California.

In addressing the aftermath of *World-Wide Volkswagen*, a four-justice plurality in *Asahi* noted that two distinct interpretations had arisen.  In one, an interpretation that the California court had adopted, sufficient jurisdiction could be "based on no more than the defendant's act of placing the product in the stream of commerce," coupled with the defendant's ability to foresee the product eventually washing ashore in the forum state.  In the other interpretation, courts "require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce."  The Court concluded that the latter interpretation was the correct one, stating that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."  It went on to add:

> Additional conduct of the defendant may indicate an intent or
> purpose to serve the market in the forum State, for example,
> designing the product for the market in the forum State, advertising
> in the forum State, establishing channels for providing regular
> advice to customers in the forum State, or marketing the product
> through a distributor who has agreed to serve as the sales agent in
> the forum State. But a defendant's awareness that the stream of
> commerce may or will sweep the product into the forum State does
> not convert the mere act of placing the product into the stream into
> an act purposefully directed toward the forum State.

5

480 U.S. at 110-112.

Four more justices joined in a concurrence that agreed, for other reasons (namely, that the burdens placed on forcing Asahi to litigate in California would be unreasonable), that jurisdiction was lacking. But they disagreed with the plurality's opinion about the "stream of commerce" approach. That concurrence, written by Justice Brennan, took the position that as long as a defendant *"is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."* Thus, the concurring justices stated that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause," without any requirement of "a showing of additional conduct." 480 U.S. at 117.

The sharp disagreement between the plurality opinions in *Asahi* prompted the Court to return to the question again in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). There, a manufacturer in England built metal-shearing machines. An independent distributor in the U.S. purchased the manufacturer's machines and resold them throughout the United States. Four of those machines were eventually sold to customers in New Jersey, and one of those customers suffered an injury due to the allegedly improper design of the machine. The customer brought suit against the English manufacturer in New Jersey, and the manufacturer challenged the existence of the court's personal jurisdiction over it. Once again, the Court split sharply. A four-justice plurality held that "a defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." It rejected Justice Brennan's concurrence in *Asahi* as being "inconsistent with the premises of lawful judicial power," making it "clear that it is the defendant's actions, not his expectations,

6

that empower a State's courts to subject him to judgment."  564 U.S. at 882-83.  Turning to the

facts of the case, the plurality found that although the manufacturer may have had "an intent to

serve the U.S. market," it had not "purposefully availed itself of the New Jersey market" in

particular.  This, the plurality held, was insufficient.

Two justices, led by Justice Breyer, concurred in the result, mostly on factual grounds.

They found that "[n]one of our precedents find that a single insolated sale[1] . . . is sufficient" to

establish the required minimum contacts.  They agreed that the plaintiff had not shown that the

manufacturer "purposefully avail[ed] itself of the privilege of conducting activities" within New

Jersey, nor that it delivered its goods in the stream of commerce "with the expectation that they

will be purchased" by New Jersey users, thus failing to satisfy the longstanding *World-Wide

Volkswagen* test.  But they hesitated to join the plurality due to concerns that the plurality's

language (that they interpreted as conditioning jurisdiction on the defendant's "intent to submit

to the power of [the] sovereign") could be difficult to apply in modern forms of commerce where

"a company targets the world by selling products from its Web site" or "instead of shipping the

products directly, a company consigns the products through an intermediary (say, Amazon.com)

who then receives and fulfills the orders" or where " the company markets its products through

popup advertisements that it knows will be viewed in a forum."  At the same time, the

concurrence disagreed with the bare "stream of commerce" approach articulated by Justice

Brennan in *Asahi*, explaining that "[i]t would ordinarily rest jurisdiction instead upon no more

than the occurrence of a product-based accident in the forum State" – a concept the Court

squarely rejected in *World-Wide Volkswagen*.  Further it noted that such would "permit every

---

[1]     The concurrence did not appear to reconcile the apparent discrepancy between one sale in
New Jersey and as many as four mentioned in the plurality opinion.

State to assert jurisdiction in a products-liability suit against any domestic manufacturer who

sells its products . . . to a national distributor, no matter how large or small the manufacturer, no

matter how distant the forum, and no matter how few the number of items that end up in the

particular forum at issue."  Thus, although the concurring justices agreed that jurisdiction was

lacking, they did not join in the plurality's reasoning.  564 U.S. at 890-93.

The 10th Circuit construes *Nicastro* to conclusively abandon the simple "stream of

commerce" theory.  In *XMission*, it explains that in *Nicastro*, "six Justices emphasized that

personal jurisdiction did not exist simply because of a defendant's awareness that its products

could, through the stream of commerce, end up in the forum State."  955 F.3d at 843.  Thus, it is

fair to say that the "stream of commerce" theory articulated in Justice Brennan's concurrence in

*Asahi* is no longer viable in this Circuit.  Instead, some form of affirmative action by the

defendant to purposefully avail itself of the forum state is necessary.  In *Old Republic Ins. Co. v.*

*Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017), the court set forth three

"frameworks" to assist in determining whether a defendant had purposefully availed itself of the

forum: (i) by maintaining continuing relationships with forum state residents (*e.g.* by entering

into continuing contractual relationships with forum state residents); (ii) by deliberately

exploiting the market in the forum state; and (iii) by engaging in intentional conduct that causes

harmful effects in the forum state.

In this case, because Mr. Dernick does not allege that Cobra entered into continuing

contracts with Colorado residents and does not allege an intentional tort by it, only the market

exploitation framework requires additional examination.  A defendant exploits the forum state's

market when it engages in "continuous and deliberate" sales to residents of the forum state.  877

F.3d at 905-06.  Factors that suggest that a defendant has exploited the forum's market include

high sales volume, a large customer base and revenues, and extensive nationwide advertising or ads targeting the forum state." *XMission*, 955 F.3d at 849.

With these principles in mind, this Court turns to the facts proffered by Mr. Dernick.[2] Cobra manufactures aftermarket auto parts. Cobra's website describes its intended markets as "North America World Wide [sic]" and it expects that distributors of its products may sell them anywhere in North America. Although the record does not provide specific figures, it appears that the vast majority of Cobra's sales are to independent distributors who, in turn, sell Cobra's products to retailers and consumers. For example, the fender that injured Mr. Dernick was first sold by Cobra to Apex, an independent Taiwanese distributor. Apex then sold the fender to its subsidiary, Adept, who imported it to the United States and sold it to Long. Long then sold the part to Mr. Dernick. On one occasion, a Taiwanese distributor called LKQ (sometimes operating under the name "Keystone") purchased goods from Cobra and requested that Cobra ship those goods directly to a facility in Aurora, Colorado. It appears that Cobra did so. Mr. Dernick also notes that Cobra maintains its own English-language website that allows users to submit an

---

[2]       Many of Mr. Dernick's factual citations in his response are solely to the contents of a proposed Third Amended Complaint that he seeks to file. But a complaint is not evidence, and neither Mr. Dernick nor anyone else with the appropriate personal knowledge has tendered an affidavit that recites the facts upon which the allegations in the proposed complaint are based. Thus, the Court declines to adopt those factual assertions that are supported solely by citation to the proposed complaint.

       The Court is mindful of Mr. Dernick's pending Objections **(# 52)** to a ruling by the Magistrate Judge that denied **(# 49)** Mr. Dernick's request to compel Cobra to produce information about its "sales of products in states other than Colorado." This Court finds that ruling is neither clearly erroneous nor contrary to law under Fed. R. Civ. P. 72(a). As in *Nicastro*, where the Supreme Court acknowledged that the defendant had contacts with states other than New Jersey but still failed to demonstrate sufficient contacts with New Jersey itself, Cobra's contacts with states other than Colorado do not bear on the jurisdictional analysis. 564 U.S. at 886 ("petitioner's purposeful contacts with New Jersey, not with the United States" are the focus of the inquiry). Thus, the Court finds that the Magistrate Judge did not clearly err in finding that Mr. Dernick's pending discovery requests were irrelevant.

"inquiry" – essentially a message – although he does not contend that users can place orders from that website that Cobra will directly fulfill.  Cobra has a website through Alibaba.com, an e-commerce platform from which users can purchase individual Cobra products, presumably to have them shipped from Cobra directly to the customer.

Based on these facts, the Court finds that Mr. Dernick has not demonstrated a *prima facie* case that Cobra's contacts with Colorado are sufficient to satisfy the Due Process clause.  It appears that the vast majority of Cobra's products reach Colorado only through the flow of the stream of commerce, without any particular efforts by Cobra to market them purposefully and specifically to Colorado residents.  Mr. Dernick argues that the "stream of commerce" theory remains viable, but as *XMission* makes clear, merely placing products into the stream of commerce with the understanding that they may eventually reach Colorado is not sufficient. Rather, it is necessary for Mr. Dernick to show that Cobra "purposefully availed" itself of the privilege of conducting business in Colorado.

Mr. Dernick argues that, if that is the correct standard, he nevertheless satisfies it by showing: (i) one instance in which Cobra shipped parts directly to Colorado at the request of a customer; and (ii) that Cobra maintains websites that allow Colorado residents to interact with Cobra and presumably order parts from Cobra to be shipped directly to Colorado.  But neither showing is sufficient.

The Court disposes of the latter contention first.  The mere fact that Cobra maintains websites that allow <u>anyone</u> in the world to communicate with it or submit an order does not suffice to constitute Cobra purposefully availing itself of the benefits of transacting business in <u>Colorado</u>.  The 10th Circuit has stated that "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed."

*Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011).  Rather, a website or posting must be "directed specifically at a forum state audience or otherwise make the forum state the focal point of the message."  *Id.*  Here, nothing in the record indicates that Cobra's own website nor its presence on Alibaba.com is intended to specifically focus on customers in Colorado.[3]

That leaves the question of whether Cobra's one-time shipment[4] of goods into Colorado at the request of its customer LKQ is enough to constitute "purposeful availment."  The Court has substantial doubt that it is.  LKQ is not a Colorado company, nor does the record reflect that it frequently requested Cobra to ship goods to it in Colorado.  Rather, the record discloses that Cobra typically shipped goods to LKQ in Taiwan, and by all appearances, Cobra's single shipment to Colorado at LKQ's request was a sort of "random, fortuitous, and attenuated" contact with Colorado that is insufficient to constitute purposeful availment.  *Compare Benton v. Cameco Corp.*, 375 F.3d 1070, 1077-78 (foreign defendant that entered into contract with a party it knew to be located in Colorado sufficient contract with the state).  But even if Cobra's single shipment to Colorado could suffice to expose Cobra to specific jurisdiction in this state, Mr. Dernick is also required to show that his claims arise from that contact.  He has not, and apparently cannot, do so.  The fender that injured Mr. Dernick was not part of Cobra's shipment to the LKQ distributor in Colorado.  Rather, it is undisputed that Mr. Dernick's fender was shipped to Long (by Apex, not Cobra) somewhere outside of Colorado.  This Court rejects the

---

[3]     The Court expresses no opinion as to whether proof of actual sales by Cobra to customers in Colorado via the Alibaba.com website would suffice, as Mr. Dernick has not alleged the existence of any such sales.

[4]     Mr. Dernick argues extensively, including in a proposed sur-reply, that Cobra "made sales it knew were destined for Colorado every single month," albeit through "an extensive, multifaceted distribution network."  But as in *Nicastro*, the operations of independent distributors to steer a defendant's product into the forum state are not contacts <u>of the defendant</u> that allow the Court to exercise jurisdiction over the defendant.

conclusion of the Colorado Court of Appeals in *Etchieson v. Central Purchasing, LLC*, 232 P.3d 301, 308 (Colo.App. 2010), that a claim "relates to" a defendant's contacts with the forum state if "a cause of action similar to that brought by the plaintiff" could be asserted based on the defendant's actual contacts with the forum, even if the defendant's actual contacts with the forum state involved completely different products than the one that injured the plaintiff. *Etchieson* cites to no federal law supporting such interpretation of the Due Process clause.

Accordingly, the Court finds that it lacks personal jurisdiction over Cobra. Cobra's Motion to Dismiss is granted.

## CONCLUSION

For the foregoing reasons, Cobra's Motion to Dismiss **(# 33)** is **GRANTED**. The claims asserted against Cobra are **DISMISSED** for lack of personal jurisdiction. Mr. Dernick's Objections **(# 52)** are **OVERRULED** and the Magistrate Judge's April 28, 2020 Order **(# 49)** is **AFFIRMED**. Mr. Dernick's Motion to Amend **(# 53)** his Complaint is **DENIED AS MOOT**, insofar as the proposed amendments would not cure the jurisdictional defect. Mr. Dernick's Motion for Leave to File a Surreply **(# 62)** is **GRANTED**, insofar as the Court has considered the tendered surreply.

Dated this 5th day of October, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge